UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

EDWARD DALE,

Defendant.

______________________________________/

Case Number 92-81127
Honorable David M. Lawson

**ORDER DENYING MOTION TO REDUCE SENTENCE**

Defendant Edward Dale has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. The Honorable Avern Cohn had sentenced Dale in 1996 to life in prison for his part in eight drug-related homicides. Dale presents multiple arguments for why extraordinary and compelling reasons warrant a sentence reduction, but all must be discounted save for his rehabilitation, which appears to be significant and sincere. However, that personal reformation does not amount to "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires. Moreover, the factors outlined in 18 U.S.C. § 3553(a), particularly the seriousness of his offenses, counsel against his release. His motion, therefore, will be denied.

I.

Defendant Edward Dale currently is serving a life sentence for his role in a violent drug trafficking conspiracy that began in the mid-1980s. Dale was a teenager at the time he first joined the group. The organization, known as "The Best Friends," was responsible for at least eight homicides. Forty-four defendants were indicted as part of the organization, and eight, including Dale, eventually went to trial. The trial lasted 32 days and involved around 70 witnesses. Dale

was convicted of three of the murders (intentional killing in furtherance of conducting a continuing criminal enterprise), as well as conspiracy to distribute cocaine and cocaine base, and using a firearm during and in relation to a drug trafficking crime. Judge Cohn imposed concurrent life sentences, which were mandated by the sentencing guideline regime in effect at the time. Dale's convictions and sentences were affirmed. *United States v. Polk*, 182 F.3d 919 (6th Cir. 1999). He has been imprisoned for more than 26 years.

Dale also has a prior criminal history. He first became involved in the Best Friends gang around the age of 15 or 16. At 19, he was convicted of obstructing a police officer and resisting arrest. Two years later, he was charged with possession of a loaded firearm in association with stealing a vehicle. He remained involved with the Best Friends while on parole for that offense. He was 22 and 23 years old when he committed the murders in this case.

Dale's post-judgment activity has been robust. He filed multiple motions and has gone to the court of appeals six times. More recently, he moved for relief under the First Step Act, arguing that he should be resentenced because his crime involved cocaine base, and the penalties for transacting in certain quantities of that substance were altered by legislation. ECF No. 2365. That motion remains pending before this Court.

Dale is presently imprisoned at FCI Talladega, a medium-security facility in Talladega, Alabama. Mot. for Compassionate Release, ECF No. 2472, PageID.19635, 19649-50. The facility currently houses 943 inmates. As of January 17, 2022, 49 inmates and 12 staff members were infected with COVID-19, five inmates had died from COVID-19, and 272 inmates had been infected and recovered from the virus. Additionally, 827 inmates (including Dale) and 165 staff members have been vaccinated. *See* https://www.bop.gov/coronavirus/.

Dale is a 52-year-old African American male. His medical records confirm that he suffers from type 2 diabetes, hypertension, and other physical ailments. Med. Records, ECF No. 2473-1, PageID.19717. He takes several medications to control his diabetes, including Metformin, Atorvastatin, Lisinopril, and insulin. *Ibid.*

Dale contends that he has reformed himself in prison. His disciplinary record is nearly spotless, with no reported incidents over the last 10 years. Case Manager Letter, ECF No. 2472-2, PageID.19658. He has exhibited a strong work ethic, working at the prison's education library and, currently, as a Health Services Orderly. Mot. for Compassionate Release, ECF No. 2472, PageID.19633. He has obtained his GED and encourages other inmates to do the same, and he has completed extensive vocational and social programming, including a number of courses focused on preparing for reentry. *Ibid.*; Program Review, ECF No. 2472-5, PageID.19682. He has submitted more than 20 letters from BOP staff attesting to his rehabilitation and noting his mentorship, professionalism, positive outlook, peaceful nature, and preparedness to work in and contribute to the civilian world. Letters from BOP Staff, Ex. B, ECF No. 2472-2; Ex. A, ECF No. 2485-2.

If released, Dale plans to live with his niece in Glendale, Arizona, where his sisters and a large number of his extended family members also live. His sister states that she will employ Dale in one of her businesses maintaining properties, and his other sister states that she will provide him with other support to help him get back on his feet. Other family members have also offered to help him find employment, training, housing, and a community outside of prison.

Dale requested a reduction in sentence from the warden at FCI Talladega based on his underlying health issues and the length of his sentence. The warden denied his request on July 7,

2020. Dale then asked the Warden to reconsider, which the warden also denied. Dale subsequently filed the present motion for compassionate release.

II.

By now it is well understood that, generally, "a federal court 'may not modify a term of imprisonment once it has been imposed,'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)), and that this "rule comes with a few exceptions, one of which permits compassionate release," *ibid.* The request for such relief must be presented by a motion filed in federal court, either by the Director of the Bureau of Prisons, 18 U.S.C. § 3582(c)(1)(A), "[o]r it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier,'" *ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Dale relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.* However, the defendant still must satisfy the other two requirements, and his "failure to meet any one of

those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied. The government contends, however, that the defendant cannot demonstrate extraordinary or compelling reasons justifying immediate release, and that the factors in 18 U.S.C. §3553(a) do not favor immediate release.

B.

Addressing the first element — extraordinary and compelling reasons — Dale argues that four reasons exist for his release that together satisfy that requirement. First, he argues that his youth at the time of the convicted conduct, together with the impact of childhood trauma, rendered him unable to make informed decisions or control his impulses and risk-seeking behavior. He notes that the sentencing guidelines are no longer mandatory, *see United States v. Booker*, 543 U.S. 220 (2005), and that courts have considered this change in the law in finding extraordinary and compelling reasons for sentence reductions where young people were sentenced to long incarceration terms and exhibited rehabilitation in prison.

Second, Dale argues that the disparity between his sentence and the sentences of his codefendants is an extraordinary and compelling reason for reduction. He observes that four codefendants who were involved in the murders — Stacey Culbert, Thomas Carr, Charles Wilkes, and Lonnie O'Bryant — are no longer imprisoned or under federal supervision. He also maintains that his sentence is unusually harsh compared to the sentences received by similar defendants across the country, both now and at the time he committed the murders.

Third, Dale argues that his rehabilitation is profound, and that his successful efforts toward self-betterment may be considered alongside other factors.

Fourth, Dale argues that he is showing signs of severe and accelerated aging. He notes that he suffers from diabetes and hypertension and argues that these conditions put him at high risk of severe illness from COVID-19. He acknowledges that he has received two doses of the Pfizer vaccine, but he argues that the risk of breakthrough infections persists and that the BOP does not perform sufficient testing.

This fourth argument does not help Dale very much. The Sixth Circuit has all but held that the availability of the COVID vaccine undercuts a prisoner's attempt to show extraordinary and compelling reasons for a sentence reduction based on the pandemic. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021).

The government contends that the other reasons are insufficient as a matter of law, because recent decisions by the court of appeals in *United States v. Hunter,* 12 F.4th 555 (6th Cir. 2021), and *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021), preclude courts from construing non-retroactive changes in the law or facts that existed when the defendant was sentenced as extraordinary and compelling justifications for sentence reductions.

However, since the government filed its brief in this case, the court of appeals has issued rulings that require the Court to consider whether these other factors, together with his remarkable rehabilitation and the pandemic, provide extraordinary and compelling reasons for such relief. *See United States v. McCall*, 20 F.4th 1108, 1115 (6th Cir. 2021). In that case, the court of appeals clarified that "a court may consider a nonretroactive change in the law as one of several factors forming extraordinary and compelling circumstances qualifying for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)." *Id.* at 1116. The court went so far as to say that a district court abuses

its discretion when it fails to consider whether the combination of the COVID-19 pandemic, rehabilitation efforts, and a nonretroactive change in sentencing law constitute extraordinary and compelling circumstances warranting a prisoner's compassionate release. *Id.* at 1113.

We have observed on other occasions that the Sixth Circuit "has not traced a consistent path when dealing with" the impact of the non-retroactive sentencing reforms on compassionate release motions. *United States v. Davenport*, No. 91-81019, 2021 WL 3489707, at *2 (E.D. Mich. Aug. 9, 2021). In *United States v. Owens*, 996 F.3d 755, 763 (6th Cir. 2021), the court of appeals held that, "in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, *along with other factors*, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied" (emphasis added). Shortly thereafter, different panels published conflicting opinions in *Jarvis* and *Hunter*, which held that courts may not treat non-retroactive amendments in the First Step Act as extraordinary and compelling explanation for a sentence reduction. *Jarvis*, 999 F.3d at 445; *Hunter*, 12 F.4th at 563. Instead, the Sixth Circuit held that non-retroactive amendments, such as changes to 18 U.S.C. § 924(c)'s stacking provisions, only may be considered when balancing the section 3553(a) factors upon a showing of "some other" extraordinary and compelling reason for a sentence reduction. *Jarvis*, 999 F.3d at 763.

Considering this "intra-circuit split," the *McCall* court explained that *Owens* controls. *McCall*, 20 F.4th at 1114. The court of appeals reasoned that, "[b]ecause *Owens* was published before *Jarvis*, *Owens* 'remains controlling authority' that binds future panels." *Ibid.* (citing *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)). Thus, "[f]aced with the conflict between *Owens* and *Jarvis*, courts 'must follow' . . . *Owens*" and consider non-retroactive changes in the law as one of several factors warranting compassionate release. *Ibid.*

But Dale's other arguments do not convey him past the threshold. He contends that *Miller v. Alabama*, 567 U.S. 460, 489 (2012), requires the Court to make individualized consideration of factors that were not available to the Court at sentencing. This is also the thrust of Dale's argument for relief under the First Step Act. *See* ECF No. 2365.

The government argues that Dale's age was well known to the Court at the time of sentencing, and that the court of appeals was clear in *Hunter*, 12 F.4th at 570-71, that age and sentencing disparities are among the facts known at sentencing and that courts thus may not weigh them to find extraordinary and compelling reasons for a sentence reduction. *See also United States v. Lemons*, 15 F.4th 747, 750 (6th Cir. 2021) (applying *Hunter* to bar consideration of age upon a motion for compassionate release). But that argument ignores the reality that these were mandatory sentences, and these factors could not have impacted the Court's sentencing decision. That does not mean, however, that they are relevant now.

The Supreme Court recognized in *Miller* that juveniles are "constitutionally different from adults for purposes of sentencing," 567 U.S. at 471, for several reasons. First, their immaturity and "underdeveloped sense of responsibility" is said to lead to "recklessness, impulsivity, and heedless risk-taking." *Ibid.* (quoting *Graham v. Florida,* 560 U.S. 48, 67-68 (2010), and *Roper v. Simmons,* 543 U.S. 551, 569 (2005)). Second, children are thought to be more vulnerable to negative peer pressure and other influences and "lack the ability to extricate themselves from horrific, crime-producing settings." *Ibid.* Third, because a child's character is still developing, "his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].'" *Ibid.* (quoting *Roper,* 543 U.S. at 570). However, when it comes to sentencing, the Sixth Circuit has drawn a bright line based entirely on chronological age, finding that *Miller*'s consideration for juveniles does not migrate to young adulthood. *United States v. Marshall*, 736

F.3d 492, 499 (6th Cir. 2013) ("Using chronological age as the touchstone for determining whether an individual is a juvenile or an adult is the standard approach in our legal system."); *see also Hunter*, 12 F.4th 555, 571 (observing that "Hunter was not a minor at the time of his offense, so his life sentence was legally valid") (citing *Jones v. Mississippi*, --- U.S. ---, 141 S. Ct. 1307, 1317 (2021)). Even if that were not the case, though, it would be difficult to characterize Dale's crimes as a manifestation of his recklessness and impulsivity. He was not involved in a single-episode offense; over a span of time, he killed three people who were involved or competed with his drug trafficking organization. That cannot be chalked up merely to recklessness, negative peer pressure, or youthful indiscretion.

Dale also argues that *Hunter* does not preclude the Court from considering any disparity between his sentence and those received by his codefendants, because their sentences and multiple resentences came after the trial court entered judgment in his case. *Hunter* suggests otherwise, noting that "[t]he extraordinary-and-compelling-reasons requirement in § 3582(c)(1)(A) cannot be met based on a mere difference of opinion regarding the significance of the facts that existed at sentencing." *Ibid.*; *see also United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021) (holding that a prisoner cannot show that extraordinary and compelling circumstances warranted his release based *solely* on the disparity between the sentence he received and the sentence they would have received if they were sentenced after the First Step Act). But that disparity still may be considered as a factor. *McCall*, 20 F.4th at 1113 (indicating that "nonretroactive sentencing disparities could support a compassionate-release motion when combined with other factors") (citing *Owens*, 996 F.3d at 763). That factor does not weigh much in the balance here, though. Dale's codefendants received shorter sentences because they pleaded guilty and cooperated. "There is nothing 'extraordinary' or 'compelling' about a sentence disparity that results from a co-defendant's

decision to plead guilty and assist the government." *Hunter*, 12 F.4th at 572; *see also United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008) ("Disparities between the sentences of coconspirators can exist for valid reasons, such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government.") Moreover, there was no sentencing disparity between Dale and his codefendants who also were convicted at trial of intentional killings and also received life sentences due the seriousness of their crimes.

Dale has offered substantial evidence of his rehabilitation, which also is a factor that must be considered along with all the other relevant information bearing on the question whether extraordinary and compelling reasons justify relief. *McCall*, 20 F. 4th at 1113. Dale's rehabilitation certainly appears profound: he has no disciplinary record to speak of, and the almost two-dozen letters he submitted from prison staff indicate that he has a strong work ethic and exceptional commitment to community service. But rehabilitation alone cannot provide an extraordinary and compelling reason for compassionate release. 28 U.S.C. § 994(t); *McCall*, 20 F. 4th at 1114. And although this factor weighs heavily in Dale's favor, it does not combine with the other considerations to establish extraordinary and compelling reasons for relief under section 3582(c)(1)(A).

C.

Even if the defendant has made a satisfactory showing of extraordinary and compelling reasons under section 3582(c)(1)(A)(i), the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a).

There is no requirement that the prisoner must establish a lack of dangerousness, as is the case for compassionate release applications made by the BOP. *See* U.S.S.G. § 1B1.13; *Jones*, 980

F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."); *Elias*, 984 F.3d at 519-20 (same).

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and concerns about "afford[ing] adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently compelling to justify a sentence reduction.

The court of appeals has held that the Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021). In this case, however, it does not appear that Judge Cohn evaluated those factors, because the life sentences were mandatory at the time.

One important factor, of course, is the applicable sentencing guideline range, 18 U.S.C. § 3553(a)(4)(A), which in this case was and still is life in prison. That alone reflects the fact that Dale's crimes were serious — perhaps the most serious known to the law. He was involved in a dangerous, violent drug trafficking organization. He was held responsible for murdering three people. At sentencing, Dale denied his conduct, but the jury had determined otherwise. Dale joined the Best Friends gang as a youth, but he remained an active member into his adulthood,

committing crimes (including the murders) until he was apprehended and charged in his early twenties. He has served more than two decades in prison. He now expresses remorse, takes responsibility, and explains that his violent upbringing and youth resulted in his crimes. Congress, however, determined that crimes like intentional murder should carry a mandatory minimum sentence of 20 years up to life in prison, and the death penalty also was an option. 21 U.S.C. § 848(e)(1)(A).

The court of appeals has expressed the view that when the crime is murder and the death penalty is an option, as here, the seriousness of the offense is the factor under section 3553(a) that carries considerable, if not preemptive, weight, *United States v. Bass*, 17 F.4th 629, 638 (6th Cir. 2021) (finding that the reduction of a life sentence to "a prison term of twenty-two years does not on its face appear proportionate to the seriousness of Bass's offenses, especially in light of the fact that his crimes rendered him eligible for the death penalty"), even in the face of an exacting and meticulous consideration of the other factors by a district judge, *id.* at 644 (White, J., dissenting) (finding that "the district court adequately explained its decision and did not abuse its discretion in concluding otherwise," and cautioning that the court of appeals "must apply the same rules on review without regard to whether the government or the inmate is aggrieved by the district court's decision"). That factor weighs heavily here, at least as far as section 3582(c)(1)(A) is concerned. The Court imposed a life sentence, which the Sentencing Commission presumably concluded was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a). One of the goals — protection of the public — was paramount in this case. Reducing a life sentence to time served would not promote respect for the law. Although Dale is less of a danger to the community due to his age and medical condition, the passage of time does not take away from the very serious nature of his crimes.

That is not to say, however, that the passage of time cannot change a person who is receptive to counselling, reflection, and the insight that accompanies it. The evidence Dale has presented to the Court easily establishes that he is such a person. Witness the 20-some letters from BOP staff attesting to his rehabilitation; extolling his mentorship, professionalism, positive outlook, and peaceful nature; and certifying his preparedness to work in and contribute to the civilian world. But that is not enough to authorize a court to shorten his sentence under the compassionate release statute. Dale may be an appropriate candidate for consideration of an executive commutation. *See Dennis v. Terris*, 927 F.3d 955, 957 (6th Cir. 2019) (quoting U.S. Const. art. II, § 2, cl. 1. ("The President . . . shall have the Power to grant Reprieves and Pardons for Offences against the United States.")). That relief, however, must come from the executive through the Department of Justice's Office of the Pardon Attorney.

III.

Dale again has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's second motion for compassionate release (ECF No. 2472) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: January 18, 2022