UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,       Case Number 92-81127

v.               Honorable David M. Lawson

EDWARD DALE, JOHN GORDON,
GENE POLK, and GREGORY BROWN,

     Defendants.

_____/

**OPINION AND ORDER DENYING MOTIONS TO VACATE SENTENCES UNDER 28 U.S.C. § 2255, GRANTING IN PART MOTIONS BY DEFENDANTS DALE, GORDON, AND POLK TO REDUCE SENTENCES UNDER THE FAIR SENTENCING ACT, GRANTING IN PART DEFENDANT BROWN'S MOTION FOR RECONSIDERATION, AND DENYING VARIOUS PROCEDURAL MOTIONS**

This case is before the Court on the multiple post-conviction motions by four defendants convicted by juries of drug conspiracy and homicide offenses. Defendants Edward Dale, John Gordon, Gene Polk, and Gregory Brown currently are serving life sentences for their roles in a violent drug trafficking organization, the "Best Friends," which began in the mid-1980s and was responsible for at least eight homicides. With the permission of the court of appeals, they filed successive motions under 28 U.S.C. § 2255, contending that their life sentences are unconstitutional under *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190, 136 S. Ct. 718 (2016), because they became involved with the Best Friends when they were juveniles. Those motions will be denied because they were filed out of time.

The defendants also filed motions for sentence reductions under the First Step Act of 2018. The trial judge, the Honorable Avern Cohn, denied the First Step Act motions filed by Gordon and Brown. Gordon appealed Judge Cohn's denial, and the Sixth Circuit reversed the decision in part as to Gordon's conviction of conspiracy to distribute cocaine and cocaine base in violation of 21

U.S.C. §§ 846 and 841.  Brown filed a motion for reconsideration of that order.  Because the defendants were sentenced to prison for an offense covered by the First Step Act, the Court may resentence them to lesser prison terms if the current circumstances, including intervening changes in fact and law, point in that direction.  The defendants have shown that the relevant factors may warrant a sentence reduction, so the Court will grant in part their motions under the FSA.

Defendant Brown also has filed a separate motion to reduce his sentence under the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A).  However, he has not established the extraordinary and compelling reasons that must be shown to obtain that separate relief.  That motion will be denied.

## I.  Background

Dale, Gordon, Polk, and Brown joined the Best Friends drug conspiracy in 1986 as juveniles: Dale was 17 years old, Polk was 16, Gordon was 15, and Brown was 14.  However, they were charged as adults with continuing to engage in the conspiracy until 1995, and with aiding and abetting intentional killings in furtherance of the continuing criminal enterprise.

In 1995, after a trial that lasted 32 days and involved around 70 witnesses, a jury convicted Dale, Gordon, and Polk of three crimes: (1) conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846; (2) intentional killing in furtherance of conducting a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e)(1)(A); and (3) using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  The jury never was asked to determine the type or quantity of drugs for which each defendant was accountable, and those facts were not determined beyond a reasonable doubt by the factfinder.  Instead, those drug quantities were assessed as sentencing factors (not crime elements) by the probation department during the presentence investigation.  Dale's and Polk's presentence reports assessed responsibility

for more than 1.5 kilograms of crack cocaine each; and Gordon's presentence report attributed at least 500 grams of crack cocaine to him.  The following year, a jury convicted Brown of the same crimes.  Again, the jury never found that he possessed any specific quantity of drugs, but his presentence report assessed responsibility for at least 50 grams to 150 grams of crack cocaine.  The defendants each were sentenced under 21 U.S.C. § 841(b)(1)(A), which at the time of their conviction and sentencing was triggered by the distribution of at least 50 grams of crack.

Although the drug quantities varied among the defendants, under the Sentencing Guidelines all four defendants' drug conspiracy convictions were cross-referenced to the first-degree murder offense section, resulting in a base offense level of 43 on all drug conspiracy and intentional killing counts.  *See* U.S.S.G. §§ 2A1.1, 2D1.1(d)(1) (1997).  Only Brown was subject to an enhanced mandatory-minimum penalty on his drug conspiracy conviction alone.  Judge Cohn imposed concurrent life sentences on all four defendants, as was mandated by the sentencing regime in effect at the time.  Dale received four concurrent life sentences (one for the drug conspiracy conviction; three for intentional killing convictions) and consecutive terms of five and 20 years on two firearm convictions under 18 U.S.C. § 924(c).  Polk also received four concurrent life sentences (one for the drug conspiracy conviction; three for intentional killing convictions) and a consecutive 45-year prison term on three section 924(c) convictions.  Gordon received two concurrent life sentences (one for the drug conspiracy conviction; one for the intentional killing conviction) as well as a consecutive term of five years on one section 924(c) firearms conviction.  Brown received two concurrent life sentences (one for the drug conspiracy conviction; one for the intentional killing conviction) as well as a consecutive term of five years on one section 924(c) firearms conviction.

The defendants' convictions and sentences were affirmed on direct appeal on June 2, 1999 and June 20, 2000.  *United States v. Polk*, 1999 WL 397922 (6th Cir. Jun. 2, 1999); *United States v. Brown*, 221 F.3d 1336 (6th Cir. 2000).  They since have filed multiple motions and have returned to the court of appeals numerous times.  Each of the four defendants has filed a successive motion to vacate his sentence under 28 U.S.C. § 2255, arguing that because their participation with the Best Friends began when they were juveniles, their life sentences are unconstitutional under *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016).  The Sixth Circuit granted the defendants leave to file these successive motions.  In November 2017, Gordon filed a motion to consolidate the petitions.  The government filed a consolidated response to the four petitions because they presented identical issues.

More recently, in 2019, the defendants each moved for relief under the First Step Act. Judge Cohn denied Gordon's and Brown's motions, concluding that because the defendants' sentencing guideline range was calculated under the intentional killing section, U.S.S.G. § 2A1.1, they were ineligible for relief under the FSA.  Brown moved for reconsideration, and Gordon filed an appeal.

On appeal, Gordon argued that his intentional killing conviction under 21 U.S.C. § 848(e)(1)(A) is covered by the First Step Act, rendering him eligible for a sentence reduction, because section 848(e)(1)(A) requires the commission of an offense that violates section 841(b)(1)(A), and because the Fair Sentencing Act modified the crack-cocaine thresholds for penalties set forth in section 841(b)(1)(A).  The Sixth Circuit rejected that argument but found that Gordon in fact was eligible for a sentence reduction under the First Step Act for his drug conspiracy conviction.  ECF No. 2457, PageID.19480-81.  It also rejected the government's argument that because Gordon is serving a concurrent life sentence on his intentional killing conviction, he

should be found ineligible for First Step Act relief under the concurrent-sentencing doctrine. The court of appeals explained that, if Gordon prevailed on his successive section 2255 motion, the First Step Act could impact the ultimate sentence he receives despite his concurrent life sentences. *Id.* at PageID.19481. Thus, the court of appeals vacated Judge Cohn's order on count 1 and remanded the case for further proceedings.

The defendants each contend that they have reformed in prison. Dale, Gordon, and Brown have submitted letters from prison officials attesting to their rehabilitation and letters from friends and family members attesting to their community support. They have spotless or near-spotless disciplinary records and appear to have taken full advantage of the educational and vocational opportunities available to them while incarcerated, suggesting that they are prepared to work in and contribute to society if released from prison.

In pursuit of that relief, and before the Court for adjudication, are motions by defendants Dale, Gordon, Polk, and Brown to vacate their sentences under 28 U.S.C. § 2255; motions by Dale, Gordon, and Polk to reduce their sentences under the First Step Act; and Brown's motion to reconsider the denial of his First Step Act motion. In addition, Gordon has moved to expedite and consolidate the proceedings, and Brown has moved to appoint an expert witness, take judicial notice of certain opinions issued by other federal courts, and hold his motion for reconsideration in abeyance. Brown also has pending a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Except for Brown's compassionate release motion, the defendants present nearly identical grounds on their motions seeking shorter sentences, so the Court will address their motions together.

II.  Section 2255 Motions

The asserted bases for the defendants' motions to vacate their sentences under section 2255 is that they first joined the drug conspiracy as juveniles, and their mandatory life prison sentences violate the rule in *Miller v. Alabama*, which held that mandatory life sentences without parole for juvenile homicide offenders contravenes the Eighth Amendment.  *See Miller,* 567 U.S. at 489. The court of appeals granted each of these defendants leave to file a second or subsequent 2255 motion on that ground.  This Court's review of a second or successive motion to vacate sentence is more exacting than the appellate court's, however, because the court of appeals may authorize a filing based on a "'prima facie showing' that the application satisfies the statutory standard.  But to survive dismissal in district court, the application must actually 'sho[w] that the claim satisfied the standard.'"  *Tyler v. Cain*, 533 U.S. 656, 661 n.3 (2001) (citations omitted).

A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or it "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006).  But section 2255 has a one-year statute of limitations, which is measured from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

The timeliness of the section 2255 motions by these four defendants is measured by subparagraph 3, which means that the defendants must have filed their latest motions within one year of "the date on which the right asserted was initially recognized by the Supreme Court." Brown filed his motion in November 2016.  Gordon and Dale filed theirs in December 2016.  And Polk filed his in January 2017.  If *Miller* is the case that establish the "newly recognized" right on which they rely, the motions are untimely.  *Miller* was decided in 2012.

*Miller* is the first Supreme Court decision to hold that mandatory life sentences without parole for juvenile offenders violates the Eighth Amendment's Cruel and Unusual Punishment Clause.  That case marked a waypoint in the "evolving standards of decency that mark the progress of a maturing society" from which the Eighth Amendment draws its meaning.  *Trope v. Dulles*, 356 U.S. 86, 101 (1958).  The Supreme Court began its development of the jurisprudence addressing juvenile offenders in the mid-2000s in a line of cases that held that the Constitution requires that juveniles be treated with more leniency than adults.  *Compare Stanford v. Kentucky*, 492 U.S. 361 (1989) (holding that the imposition of capital punishment on an individual for a crime committed at 16 or 17 years of age did not violate the Eighth Amendment) *with Roper v. Simmons*, 543 U.S. 551 (2005) (abrogating *Stanford* and holding that executing individuals under 18 years of age at the time of their capital crimes violated the Eighth Amendment) *and Graham v. Florida*, 560 U.S. 48 (2010) (holding that the Eighth Amendment prohibits the imposition of a life without parole sentence on juvenile offenders who did not commit homicides).

The 2012 *Miller* decision represented a further step in that direction.  In that case, the Supreme Court identified three characteristics that render juveniles "constitutionally different from

adults for purposes of sentencing." *Miller*, 567 U.S. at 471.  First, juveniles lack maturity and have "'an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking." *Id.* at 471 (quoting *Roper*, 543 U.S. at 569).  Second, "children 'are more vulnerable . . . to negative influences and outside pressures,'" have "limited 'contro[l] over their own environment,' and lack the ability to extricate themselves from horrific, crime-producing settings." *Ibid.* (quoting *Roper*, 543 U.S. at 569).   Finally, a juvenile's "character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].'" *Ibid.* (quoting *Roper*, 543 U.S. at 570).  Four years later, the Supreme Court recognized that *Miller* announced a new rule of substantive constitutional law and declared that it applies retroactively.  *Montgomery v. Louisiana*, 577 U.S. 190, 208-09 (2016).

The defendants argue that the one-year limitations period should not start until January 26, 2016, when the Supreme Court decided *Montgomery* and made the substantive rule of *Miller* retroactive on collateral review.  *See Montgomery*, 577 U.S. at 206.  That would not save Polk's motion, which was filed a year and five days after *Montgomery* was decided.  But more to the point, the retroactivity recognition date does not establish the beginning of the limitation period.  Section 2255(f)(3) "unequivocally identifies one, and only one, date from which the 1-year limitation period is measured: 'the date on which the right asserted was initially recognized by the Supreme Court.'"  *Dodd v. United States*, 545 U.S. 353, 357 (2005) (quoting 28 U.S.C. § 2255(f)(3)); *see also Raybon v. United States*, 867 F.3d 625, 630 (6th Cir. 2017) (citing *Dodd*, for the proposition that "§ 2255(f)(3) is clear — relief is available one year after the Supreme Court initially recognizes the right").  The date on which the right asserted was made retroactively applicable is irrelevant.  *Dodd*, 545 U.S. at 357.  Although that rule has "the potential for harsh results in some cases," including this one, the legislative text compels that result.  *Ibid.*

Gordon contends, however, that *Montgomery* did not simply make *Miller* retroactively applicable, but rather it "significantly clarified" the ruling. Citing the Supreme Court's decision in *Tatum v. Arizona*, --- U.S. ---, 137 S. Ct. 11, 12 (2016) (Sotomayor, J., concurring in the decision to grant, vacate, and remand), he contends that *Montgomery* requires sentencing courts to evaluate "more than mere consideration of a juvenile offender's age before the imposition of a sentence of life without parole." 137 S. Ct. at 13. And the Sixth Circuit has allowed that the Supreme Court described the reach of its *Miller* decision more broadly in *Montgomery*. *See Atkins v. Crowell*, 945 F.3d 476, 478 (6th Cir. 2019) (noting that, although the *Miller* Court repeatedly disclaimed the reach of its holding by warning that it did "not categorically bar a penalty for a class of offenders," the *Montgomery* Court found that "*Miller* drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption") (quoting *Miller*, 567 U.S. at 465; *Montgomery*, 136 S. Ct. at 734)); *see also Mathena v. Malvo*, 139 S. Ct. 1317 (2019) (granting *certiorari* on the question whether *Montgomery* expanded *Miller's* holding; the parties later stipulated to dismiss the case). But the Sixth Circuit also has interpreted *Montgomery*'s holding to be that "*Miller's* prohibition on mandatory life without parole for juvenile offenders is indeed retroactive." *Hill v. Snyder*, 821 F.3d 763, 765 (6th Cir. 2016). Applying that reasoning, courts in this circuit have denied similar section 2255 motions as untimely. *See Stevenson v. Woods*, 2019 WL 11753772, at *2 (6th Cir. May 30, 2019) (finding untimely a habeas petition filed more than one year after the *Miller* decision); *United States v. Thornton*, 2020 WL 2832049, at *2 (E.D. Mich. May 12, 2020) (Friedman, J.) (same); *Hill v. Rewerts*, 2020 WL 248413, at *3 (E.D. Mich. Jan. 16, 2020) (Borman, J.) (same); *Taylor v. Winn*, 2019 WL 2464529, at *3 (E.D. Mich. June 13, 2019) (Michelson, J.) (same); *Daniel v. Phillips*, 2021 WL 1794767, at *4 (W.D. Tenn. May 5, 2021) (same); *Blocker v. Mays*, 2019 WL 4773825,

at *4 (E.D. Tenn. Sept. 30, 2019) (same); *Brooks v. Jordan*, 2019 WL 8013865, at *3 (W.D. Ky. Oct. 1, 2019) (same), *report and recommendation adopted*, 2019 WL 6896912 (W.D. Ky. Dec. 18, 2019).  This Court reaches the same conclusion.

Nonetheless, even if the defendants' motions were timely filed, *Miller* does not provide the defendants with grounds for sentencing relief.  The second superseding indictment charges the defendants with engaging in a drug conspiracy that began in 1986 and continued until 1995. Second Sup. Indictment, ECF No. 882, PageID.10278-79.  Although the defendants were juveniles when they first joined the conspiracy, they participated in a drug trafficking organization over a span of time that continued into their adulthood.  *See, e.g.*, Dale PSR ¶ 17 (drug dealing in 1992 at 22 years old); Gordon PSR ¶¶ 18-24 (drug dealing from 1990-93 at the ages of 19 through 22); Polk PSR ¶ 26 (drug dealing in 1991 at 21 years old); Brown PSR ¶¶ 30-31 (drug dealing from 1991-94 at the ages of 19 through 22).  It is well-established that a defendant "who enters a conspiracy prior to his eighteenth birthday can be tried as an adult if he continues in the conspiracy after that time."  *United States v. Maddox*, 944 F.2d 1223, 1233 (6th Cir. 1991) (citing *United States v. Gjonaj*, 861 F.2d 143, 144 (6th Cir. 1988)); *see also United States v. Machen*, 576 F. App'x 561, 565 (6th Cir. 2014).  Because conspiracy is a "continuing crime," a participant whose participation spans into adulthood cannot be "insulated from adult responsibility for his criminal activity because he started young."  *Gjonaj*, 861 F.2d at 144; *see also Smith v. United States*, 568 U.S. 106, 111 (2013) ("Since conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law through every moment of [the conspiracy's] existence . . . .") (citations omitted).  Because the defendants were adult offenders in fact, albeit young ones, the rule in *Miller* cannot help them.

The defendants respond that the logic of *Miller* nevertheless applies and warrants sentence reductions because their immaturity and "underdeveloped sense of responsibility" is what led them to engage in the "recklessness, impulsivity, and heedless risk-taking" of joining the conspiracy in the first place. *See Miller*, 567 U.S. at 471 (quoting *Graham v. Florida,* 560 U.S. 48, 67-68 (2010), and *Roper v. Simmons,* 543 U.S. 551, 569 (2005)).   Accepting that argument, of course, would extend *Miller*'s holding, and an argument for extending a legal rule necessarily cannot serve as the basis for a second or successive section 2255 motion, which must be based on "a new rule of constitutional law." 28 U.S.C. § 2255(h)(2).   Moreover, the Sixth Circuit has foreclosed that very argument, holding that *Miller's* leniency for juveniles does not migrate to young adulthood; the benchmark is chronological age.   *United States v. Marshall*, 736 F.3d 492, 499 (6th Cir. 2013) ("Using chronological age as the touchstone for determining whether an individual is a juvenile or an adult is the standard approach in our legal system."); *United States v. Hunter*, 12 F.4th 555, 571 (6th Cir. 2021) (observing that "Hunter was not a minor at the time of his offense, so his life sentence was legally valid") (citing *Jones v. Mississippi*, --- U.S. ---, 141 S. Ct. 1307, 1317 (2021)).

The defendants' latest motions to vacate their sentences under 28 U.S.C. § 2255 were filed out of time, and therefore they must be denied.

### III. First Step Act Motions

### A.  Eligibility

The four defendants also seek relief under the First Step Act.   Gordon and Brown filed their motions earlier, and Judge Cohn denied them.   However, the court of appeals reversed the denial of Gordon's motion, and Brown has moved for reconsideration.

"Although a district court generally 'may not modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c), a court may do so under certain limited circumstances,

including 'to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.'" *United States v. Hall*, 661 F.3d 320, 322 (6th Cir. 2011) (quoting 18 U.S.C. § 3582(c)(1)(B)). The defendants' drug conspiracy convictions are among those that Congress has addressed "by statute." In section 2 of the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (2010), Congress increased the quantity of crack necessary to trigger a ten-year mandatory minimum sentence from 50 grams to 280 grams. *Dorsey v. United States*, 567 U.S. 260, 269 (2012); Pub. L. 111-220, 124 Stat. 2372 § 2(a)(2). Then, in 2018 Congress passed the First Step Act; in section 404 of the Act, the Fair Sentencing Act's statutory changes for crack cocaine offenses were made retroactive to defendants who were sentenced before August 3, 2010. *United States v. Boulding*, 960 F.3d 774, 778 (6th Cir. 2020) (citing the First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194 (2018)). Section 401 of the Act also made changes to the types of prior offenses that trigger enhanced penalties under section 841(b)(1)(A) and 841(b)(1)(B). *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019).

"[E]ligibility for resentencing under the First Step Act turns on the statute of conviction alone," regardless of the drug quantity that actually may have been involved in the offense. *Boulding*, 960 F.3d at 781. And "[i]t makes no difference to [a defendant's] eligibility for resentencing under the First Step Act that his sentencing guidelines have not changed or that he was sentenced as a career offender." *United States v. Hicks*, 427 F. Supp. 3d 930, 932 (E.D. Mich. 2019) (citing *United States v. Beamus*, 943 F.3d 789, 791 (6th Cir. 2019)). The First Step Act imposes only two limits on eligibility. "Defendants may not seek a reduction if their sentence was already modified to comport with the Fair Sentencing Act . . . . And defendants may not seek resentencing under the First Step Act if they lost a prior motion after a 'complete review of the

motion on the merits.'" *Beamus*, 943 F.3d at 791 (quoting First Step Act of 2018, § 404(c), 132 Stat. at 5222).

The government argues that resentencing the defendants on Count 1 would have no effect whatsoever on their overall sentences because their concurrent life sentence on other counts would remain in place. The government contends, therefore, that the Court should apply the concurrent-sentence doctrine and deny Brown resentencing under the First Step Act. The defendants counter that they are eligible under the First Step Act for sentence reductions on their section 848(e)(1)(A) intentional killing convictions because that statute requires the commission of an offense that violates section 841(b)(1)(A), the penalties for which were modified by the Fair Sentencing Act. Neither of these arguments carries the day.

The defendants' argument was rejected outright already by the court of appeals. In *United States v. Snow*, 967 F.3d 563, 564 (6th Cir. 2020) (*per curiam*), it held that that because the Fair Sentencing Act never "modified" section 848, "the First Step Act's text and structure do not support extending resentencing relief to . . . § 848(e)(1)(A) conviction[s]." Applying *Snow*, the court of appeals expressly rejected Gordon's claim for relief from the sentence imposed for his section 848(e)(1)(A) conviction. *United States v. Gordon*, No. 19-1739, Doc. 35-2, at 3-4 (6th Cir. Jan. 1, 2021) (am. order).

But those holdings do not preclude relief. In Gordon's appeal, the court made clear that his intentional killing conviction did not preclude the Court from considering whether he otherwise is eligible for a sentence reduction for his section 841 drug offense. That the defendants received sentences based on guidelines determined by the application of the murder cross-reference therefore does not make them ineligible for sentencing relief. *Ibid.* Judge Cohn "erred in concluding otherwise" when he denied Gordon and Brown's First Step Act motions. And the court

of appeals also has held that once it is found that a defendant was sentenced for a covered offense, the First Step Act, permits (but does not require) plenary resentencing. *United States v. Maxwell*, 991 F.3d 685, 691-92 (6th Cir. 2021).

Nor does the so-called concurrent-sentence doctrine preclude the defendants' request for relief. The Court has the discretion to reduce the total sentence when a covered offense is involved. *United States v. Jackson*, 515 F. Supp. 3d 708, 711-13 (E.D. Mich. 2021) (Lawson, J.) (citing *United States v. Hudson*, 967 F.3d 605 (7th Cir. 2020); *United States v. Gravatt*, 953 F.3d 258, 262 (4th Cir. 2020)). The court of appeals's acknowledgement that the First Step Act permits plenary resentencing also suggests that the Court may reduce an entire sentence that includes both covered and non-covered offenses. *Maxwell*, 991 F.3d at 691-92. The defendants each were convicted of "covered offenses" under the First Step Act because they were convicted of conspiring to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846 and 841(a)(1) and sentenced under section 841(b)(1)(A). *United States v. Boulding*, 960 F.3d 774, 778-81 (6th Cir. 2020). They therefore are eligible for resentencing under the First Step Act. *Id.* at 781-84. As eligible defendants, they are "entitled to an accurate amended guideline calculation and renewed consideration of the 18 U.S.C. § 3353(a) factors." *Id.* at 776.

Brown's procedural posture differs from that of his co-defendants because Judge Cohn denied Brown's First Step Act motion and Brown filed a motion for reconsideration. Brown properly sought relief under Local Rule 7.1, under which the Court may grant reconsideration of non-final orders if "[t]he court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision." E.D. Mich. LR 7.1(h)(2)(A). As the court of appeals explained in defendant Gordon's appeal on the same issue, Judge Cohn erred when he concluded that Brown was

- 14 -

ineligible for resentencing under section 404 of the First Step Act because of his concurrent sentence for his intentional killing conviction. *See United States v. Gordon*, No. 19-1739, Doc. 35-2, at 3-4 (6th Cir. Jan. 1, 2021) (am. order).   Brown is eligible for resentencing under section 404 of the First Step Act because the Court imposed a sentence on Brown for a "covered offense" on Count 1. *Boulding*, 960 F.3d at 778-81.

Of course, although a defendant may be eligible for relief under the First Step Act, "[a] district court . . . is not 'require[d] . . . to reduce any sentence' pursuant to section 404(b)." *United States v. Foreman*, 958 F.3d 506, 510 (6th Cir. 2020) (quoting First Step Act §§ 404(b), (c)). "Instead, the choice of whether to grant such relief to an otherwise eligible defendant is left to 'the district court's sound discretion.'" *Ibid.* (citing *Beamus*, 943 F.3d at 792).

## B.  Factors

The United States Supreme Court recently held in *Concepcion v. United States*, --- U.S. ---, 142 S. Ct. 2389, 2404 (2022), "that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act."   The defendants point to several changes in the law that may bear on resentencing.

For one, the defendants contend that they should receive sentences of no greater than 20 years on each drug conspiracy count because no jury found that they possessed a specific amount of crack cocaine beyond a reasonable doubt.   The defendants are correct that, under current law, they could be lawfully sentenced only under subparagraph (C) of section 841(b)(1), which applies when specific drug quantities are not alleged or a jury does not make a finding regarding specific drug amounts. *See United States v. Ware*, 964 F.3d 482, 488 (6th Cir. 2020) ("Because a jury did not find his offenses involved specific drug amounts, under today's law he could be lawfully

sentenced only under 21 U.S.C. § 841(b)(1)(C) . . ."); *United States v. Stewart*, 306 F.3d 295, 310 (6th Cir. 2002) ("[W]hen specific quantities are not alleged, a defendant should be sentenced under 21 U.S.C. § 841(b)(1)(C), which establishes the default statutory maximum sentences and does not require as an element of the offense a specific quantity of drugs.").

At the time the defendants were convicted and sentenced, the jury was not required to make a specific finding as to the quantities of drugs involved in an offense in order to sentence them under subparagraph (A). *See Ware* 964 F.3d at 488. That did not become the rule until 2000, when the U.S. Supreme Court held that any fact that increases the penalty for a crime beyond a prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

*Apprendi* was decided after the defendants' convictions and sentencings and does not change the fact that the defendants were sentenced under 841(b)(1)(A). Nor does it apply retroactively on collateral review. *Ware* 964 F.3d at 488. However, because the source of the *Apprendi* rule is "the Constitution itself . . . the underlying right necessarily pre-exists [the Supreme Court's] articulation" of it, and the defendants' Sixth Amendment rights necessarily were violated when their sentences were enhanced due to judge-found facts. *Ibid.* (quoting *Danforth v. Minnesota*, 552 U.S. 264, 271 (2008)). Therefore, the Court may still consider "the impact that *Apprendi* would have had" on the defendants' statutory sentencing range as "a factor" in whether to exercise its discretion to grant the defendants relief for which "Congress has made [them] eligible." *Ibid.* This weighing is properly conducted as part of the section 3553(a) analysis. *United States v. Maxwell*, 991 F.3d 685, 691 (6th Cir. 2021).

Even if that were not the case, Brown would face a different statutory minimum than his co-defendants on his drug conspiracy conviction. Unlike his co-defendants, Brown was held

responsible for possessing only 50 to 150 grams of crack cocaine. Had Brown been sentenced for his offense today, he would be subject to the "more lenient prison range for subparagraph (B)," for which a 5-year mandatory minimum applies. *Terry v. United States*, --- U.S. ---, 141 S. Ct. 1858, 1863 (2021) (citing 21 U.S.C. § 841(b)(1)(B)). He also would not receive an enhanced penalty because his prior felony offense does not qualify as a "serious drug felony" under the First Step Act. Section 401 of the statute imposes higher mandatory minimum penalties on individuals with prior state-law felony-drug convictions only if their offense of conviction carries "a maximum term of imprisonment of ten years or more." *See* Pub. L. No. 115-391, 132 Stat. 5194, § 401(a)(1) (defining "serious drug felony" to mean certain offenses described in 18 U.S.C. § 924(e)(2)); 18 U.S.C. § 924(e)(2) (defining the state-law controlled-substance offenses that qualify as a "serious drug offense"). Brown's prior state-law felony conviction was for possessing less than 25 grams of cocaine, an offense that carries a maximum of penalty of no more than four years' imprisonment under Michigan law. Brown PSR ¶ 7; Mich. Comp. Laws § 333.7403(2)(v).

The Sentencing Guideline range would not change for any of the defendants, however. The first-degree murder cross-reference would still apply to all four defendants, resulting in a base offense level of 43 for each drug conspiracy charge. *See* U.S.S.G. §§ 2A1.1(a), 2D1.1(d)(1). The guideline sentencing range for each defendant therefore would still be life. But that sentence would not be mandated, because the Sentencing Guidelines no on longer are mandatory. *United States v. Booker*, 543 U.S. 220 (2005).

Moreover, when exercising discretion to determine if a reduced sentence is appropriate for a First-Step-Act-eligible defendant, the Court may not focus exclusively on the Sentencing Guideline range. Instead, it must consider whether "the length of [the defendants'] sentence[s] conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a)" and determine whether "the

- 17 -

§ 3553(a) factors supported the sentence[s] imposed." *United States v. Sherrill*, 972 F.3d 752, 768 (6th Cir. 2020) (quoting *United States v. Perez-Rodriguez*, 960 F.3d 758, 753 (6th Cir. 2020)); *see also Boulding*, 960 F.3d at 784 (holding that the courts must undertake a "thorough renewed consideration of the § 3553(a) factors" for eligible defendants).   Although the Court is not "require[d]" to reduce the defendants' sentences, *Maxwell*, 991 F.3d at 689, it must give "'adequate consideration to [the § 3553(a) factors;'" it cannot give undue weight to certain factors and too little weight to others, *United States v. Johnson*, 26 F.4th 726, 736 (6th Cir. 2022) (quoting *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766-67 (2020)).   The court of appeals has held that the Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction."   *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021).   In this case, however, Judge Cohn did not evaluate those factors because the life sentences were mandatory at the time.

When considering and balancing the section 3553(a) factors, "evidence of postsentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.'"   *Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting 18 U.S.C. § 3553(a)(1)).   And as the Supreme Court has reminded us, district courts must consider "intervening changes of . . . fact" when "exercising their discretion to reduce a sentence pursuant to the First Step Act."   *Concepcion*, 142 S. Ct. at 2404.   Three of the defendants have pointed to their records of self-improvement and rehabilitation during their more than two decades in prison.   The evidence stands as an affirmation of the idea that the passage of time can change a person who is receptive to counselling, reflection, and the insight that accompanies it.

### 1. Edward Dale

Dale's rehabilitation while in prison indeed has been significant.  His disciplinary record is nearly spotless, with no reported incidents over the last 10 years.  Case Manager Letter, ECF No. 2472-2, PageID.19658.  He has exhibited a strong work ethic, working at the prison's education library and, currently, as a Health Services Orderly.  Mot. for Compassionate Release, ECF No. 2472, PageID.19633.  He has obtained his GED and encourages other inmates to do the same, and he has completed extensive vocational and social programming, including a number of courses focused on preparing for reentry.  *Ibid.*; Program Review, ECF No. 2472-5, PageID.19682.  Dale has submitted more than 20 letters from BOP staff attesting to his rehabilitation and noting his mentorship, professionalism, positive outlook, peaceful nature, and preparedness to work in and contribute to the civilian world.  Letters from BOP Staff, Ex. B, ECF No. 2472-2; Ex. A, ECF No. 2485-2.

### 2. John Gordon

Gordon now expresses remorse, takes responsibility, and explains that his violent upbringing and youth resulted in his crimes.  His prison record might be characterized as "unremarkable," but there is no evidence that he has been anything but a model prisoner.  As of May 2019, he had taken more than 40 educational courses, including drug rehabilitation programming and career training, computer, and financial skill classes.   Transcript, ECF No. 2371-3, PageID.17548.  He earned his GED while in prison, *ibid.*, and has been awarded at least 13 certificates of achievement for his completion of various re-entry programs, Certificates, ECF No. 2371-5, PageID.17557.  Gordon also has worked continuously in a number of prison jobs, and while his prison disciplinary history is not in the record, the government does not allege that he has incurred any major infractions.  Work Detail, ECF No. 2371-4, PageID.17552.  His children, parents, partner, and siblings attest to his personal growth despite a difficult upbringing and aver

that they will help Gordon make good on his plans successfully to reenter the community.  Letters, ECF No. 2359, PageID.17360-63.

### 3.  Gene Polk

Polk has not discussed or analyzed the section 3553(a) factors in any of his briefs.  His supplemental brief motion merely acknowledges that the Court should consider the factors.  It does not discuss Polk's rehabilitation or any other relevant facts.  Polk's second supplemental brief in support of his motion likewise does not raise any arguments regarding Polk's post-sentencing rehabilitation or prison record.  Before the Court can consider whether a shorter sentence is an appropriate remedy for Polk, he will have to furnish relevant information to the Court or the Probation Department.

### 4.  Gregory Brown

Brown likewise expresses remorse, takes responsibility, and explains that his violent upbringing and youth resulted in his crimes.  He has provided statistics demonstrating that life sentences are not always appropriate for murder, which are a "starting point for district judges in their efforts to 'avoid unwarranted sentence disparities among defendants with similar criminal records who have been found guilty of similar conduct.'"  *United States v. Stock*, 685 F.3d 621, 630 n.6 (6th Cir. 2012) (quoting 18 U.S.C. § 3553(a)(6)).  And he has furnished evidence of his substantial rehabilitation, including letters from BOP staff attesting to his rehabilitation; extolling his mentorship, professionalism, positive outlook, and peaceful nature; and certifying his preparedness to work in and contribute to the civilian world.  Brown credits this growth in part to the wisdom of age, noting that he was a young man when he committed the crimes for which he was convicted, and developed his prior criminal record during a very difficult childhood.

C.  Remedy

All of these facts could make a difference in resentencing.  And the Court must consider them.  *Concepcion*, 142 S. Ct. at 2404 (holding that "when deciding a First Step Act motion, district courts [must] . . . explain their decisions and demonstrate that they considered the parties' arguments") (citations omitted).  But due to the length of time that has passed since the defendants last were evaluated, the Court needs updated information to determine the extent of the relief they should be afforded.  The Probation Department will be able to furnish an updated report.

IV.  Defendant Brown's Compassionate Release Motion

Defendant Brown also has filed a motion for compassionate release, presenting multiple arguments for why extraordinary and compelling reasons now warrant a sentence reduction.  However, none satisfy the requirements of 18 U.S.C. § 3582(c)(1)(A).

Brown requested a reduction in sentence from the warden at FCI Talladega, which was denied on July 21, 2020.  Brown asked for reconsideration, which the warden also denied.  Brown then filed a *pro se* motion for compassionate release.  With the assistance of counsel and upon leave of the Court, Brown also filed a supplemental brief in support of his compassionate release motion.  The government filed a response to the supplemental brief.  Some of Brown's arguments for compassionate release overlap with arguments he presented in his motion for First Step Act relief and his motion to vacate his sentence under 28 U.S.C. § 2255.

The court of appeals has held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative."  *United States v. Elias*, 984 F.3d 516, 519-29 (6th Cir. 2021).  But the court has provided guidance on how those terms apply in specific instances.

Brown offers five arguments.  First, he says that the Court should consider his categorical eligibility for a sentence reduction under the First Step Act as an extraordinary and compelling reason for relief.  But he points to no authority even remotely suggesting that the First Step Act and the compassionate relief statute relate to each other or somehow merge to furnish a unique basis for reducing a sentence.  Each statute outlines separate and distinct grounds for relief, and the requirements of each must be satisfied independently.  Neither acts as a safety valve for the others.

Second, Brown reprises his section 2255 motion argument that his youth at the time of the convicted conduct, together with the impact of childhood trauma, rendered him unable to make informed decisions and warrants a reduced sentence.  He argues that *Miller v. Alabama* should apply to him because he joined the conspiracy at issue at age 13.  The Court addressed the merits of that argument earlier in this opinion.  Moreover, the court of appeals foreclosed Brown's argument in *United States v. Hunter*, which held that facts "that existed at sentencing," such as the defendant's youth, cannot fit the definition of "extraordinary and compelling."  12 F.4th 555, 570 (6th Cir. 2021).  Brown insists that *Hunter* was wrongly decided.  But whether it was or wasn't, district courts do not have the luxury of disregarding precedent or settled law to reach a desired result.

Third, Brown asserts that, under *United States v. Booker*, 543 U.S. 220 (2005), the Court would no longer be required to issue a life sentence.  Once again, Sixth Circuit precedent dooms that argument.  *Hunter*, 12 F.4th at 565-68 (holding that "non-retroactive changes in the law," including changes based on the decision in *Booker*, "cannot be relied upon as 'extraordinary and compelling' explanations for a sentence reduction"); *United States v. McKinnie*, 24 F.4th 583, 587 (6th Cir. 2022) (reaffirming *Hunter*); *United States v. Carter*, 500 F.3d 486, 491 (6th Cir. 2007)

(holding that *Booker* does not provide grounds for relief on a compassionate release motion brought under 18 U.S.C. § 3582(c)(2)); *Humphress v. United States*, 398 F.3d 855, 860 (2005) (holding, in the context of a 28 U.S.C. § 2255 motion, that "*Booker*'s rule does not apply retroactively in collateral proceedings").

Fourth, Brown argues that the Court should consider the harsh conditions of pandemic confinement and his significant rehabilitation alongside other factors that weigh in favor of compassionate release.  But the Sixth Circuit has narrowed significantly the circumstances in which the pandemic can provide extraordinary and compelling reasons for a sentence reduction. It has allowed that the combination of the pandemic, rehabilitation efforts, *and* a nonretroactive change in sentencing law may constitute extraordinary and compelling circumstances warranting a prisoner's compassionate release.  *United States v. McCall*, 20 F.4th 1108, 1109 (6th Cir. 2021). However, it also has held that, in light of the availability of COVID-19 vaccinations, the pandemic itself is not extraordinary and compelling, nor is the combination of a defendant's rehabilitation and the risk of complications from COVID-19.  *McKinnie*, 24 F.4th at 588; *see also United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021); 28 U.S.C. § 994(t).

Finally, Brown argues that the section 3553(a) factors favor a sentence reduction. However, without establishing an extraordinary and compelling reason for relief under section 3582(c)(1)(A), the 3553(a) factors have no impact on a motion for compassionate relief.  *See United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021).

Brown is not entitled to relief under 18 U.S.C. § 3582(c)(1)(A).

## V.  Miscellaneous Procedural Motions

Defendant Gordon moved to consolidate his section 2255 motion with those filed by defendants Dale and Polk.  He argues that the legal and factual issues in each case are similar, and

that consolidation will speed resolution of the issues while avoiding duplication of discovery, research, and pretrial motions. That relief has in effect been granted, as the Court has addressed all the section 2255 motions together. But there is no reason to enter an order formally consolidating them, consolidation is discretionary with the Court, and that motion will be denied. *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1010-11 (6th Cir. 1993) (quoting Fed. R. Civ. P. 42(a)).

Gordon also filed a motion to expedite consideration of his section 2255 and first Step Act motions. Because those motions are addressed in this opinion, his motion to expedite will be denied as moot.

Defendant Brown filed a motion to hold in abeyance his motion for reconsideration. However, because all the parties' pending motions have been addressed in this opinion, there is no reason to hold off on a decision on that motion.

Brown also filed motions to appoint an expert to give testimony about youthful offenders in support of his section 2255 motion, and motions to take judicial notice of certain appellate decisions. There is no need to appoint an expert because the section 2255 motion will be denied as untimely. And the Court is aware of precedential decisions by the appellate courts and need not take judicial notice of domestic law. *See* Fed. R. Evid. 201(a) (stating that under that rule, a court may take "judicial notice of an adjudicative fact only").

VI.

Defendants Dale, Gordon, Polk, and Brown are not entitled to relief under 28 U.S.C. § 2255. They are eligible, however, for a sentence reduction under the First Step Act. The Court will need current information so that it can apply the factors found in 18 U.S.C. § 3553(a) and make an informed decision on resentencing. Defendant Brown is not entitled to relief under 18 U.S.C. § 3582(c)(1)(A). And the parties' various procedural motions lack merit.

Accordingly, it is **ORDERED** that the defendants' motions to vacate their sentences under 28 U.S.C. § 2255 (ECF Nos. 2266 [Dale]; 2264, 2337 [Gordon]; 2275 [Polk] 2258, 2272 [Brown]) are **DENIED**.

It is further **ORDERED** that defendant Brown's motion for compassionate release (ECF No. 2471) is **DENIED**.

It is further **ORDERED** that the motions by defendants Dale, Gordon, and Polk to reduce their sentences under the First Step Act (ECF Nos. 2365 [Dale]; 2359, 2500 [Gordon]; 2366 [Polk]), and defendant Brown's motion for reconsideration (ECF No. 2391) are **GRANTED IN PART**.

It is further **ORDERED** that defendant Brown's motions to appoint an expert (ECF No. 2311), to hold his motion for reconsideration in abeyance (ECF No. 2392), and to take judicial notice (ECF Nos. 2369, 2379); Gordon's motions to expedite the proceedings (ECF No. 2361) and to consolidate the defendants' 2255 motions (ECF No. 2296); and Polk's motion for joinder in supplemental briefs filed by Dale (ECF No. 2389) are **DENIED**.

It is further **ORDERED** that United States Probation Department provide updated, current information on the defendants' status with updated presentence reports by **September 26, 2022**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 20, 2022